UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELAINE L. CHAO, Secretary of Labor,
United States Department of Labor,

    Plaintiff,

v.

File No. 1:05-CV-638

HON. ROBERT HOLMES BELL

LOCAL 951, UNITED FOOD AND
COMMERCIAL WORKER
INTERNATIONAL UNION,

    Defendant.
    _____/

## O P I N I O N

Elaine L. Chao, Secretary of Labor, United States Department of Labor (the "Secretary"), filed this action against Local 951 of the United Food and Commercial Worker International Union (the "Union") to set aside the results of the Union's 2004 Officer's Election and to conduct new elections under the supervision of the Secretary.

Russell Blunden was a candidate for the office of Union President in the 2004 Officer's Election. Blunden ran against the incumbent president, Robert Potter. The election was conducted by mail ballots which were sent out to approximately 33,000 Union members on August 16, 2004. After the ballots were sent out the Potter Slate used a telephone service to make approximately 27,000 campaign calls. The ballots were tallied on September 7, 2004. The Potter Slate won the election.

Blunden challenged the election results by letter to the Union's General Election Chairman and the International Union. After the Union denied his challenge he filed his complaint with the Secretary of Labor. The Secretary of Labor filed this action pursuant to Title IV of the Labor-Management Disclosure and Reporting Act of 1959 ("LMRDA"), 29 U.S.C. § 481 *et seq.*, seeking a judgment declaring that the 2004 election was void and directing the Union to conduct a new election.

This matter is currently before the Court on the Secretary's motion for summary judgment. For the reasons that follow the Secretary's motion will be denied.

**I.**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the moving party carries its burden of showing there is an absence of evidence to support a claim then the non-moving party must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The

proper inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

## II.

In her motion for summary judgment the Secretary alleges that the Union violated Title IV of LMRDA and that the violation may have affected the outcome of the September 7, 2004 union election. Although the Secretary has alleged numerous election violations in her complaint, for purposes of this motion the Secretary has focused on one issue – discrimination in the use of membership lists. The Secretary contends that there is no genuine dispute of fact that Blunden exhausted his internal union remedies before filing his complaint with the Secretary; that the Union violated § 401(c) of the LMRDA by discriminating in its use of membership lists; and that the membership list violation may have affected the outcome of the September 7, 2004 election for the offices of President, Vice President #30 Central Region, Vice President #35 Central Region and Vice President #40 Central Region.

### A.  Exhaustion

"In enacting the LMRDA, Congress sought to provide 'a comprehensive scheme for the regulation of union elections.'" *Davis v. United Auto. Workers of America*, 390 F.3d 908, 911 (6th Cir. 2004) (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 531-32 (1972)).

3

After a union election has already been conducted, the exclusive remedy is an action brought by the Secretary of Labor. 29 U.S.C. § 483; *Trbovich*, 404 U.S. at 531. Accordingly, a union member who wishes to challenge the results of an election must first file a complaint with the Secretary of Labor. 29 U.S.C. § 482(a). If the Secretary finds probable cause to believe that a violation of the LMRDA has occurred, the Secretary may file suit in federal district court. 29 U.S.C. § 482(b).

Before a union member may file a complaint with the Secretary he must first exhaust the remedies available under the constitution and bylaws of the union and its parent body, or have invoked such available remedies without obtaining a final decision within three months. 29 U.S.C. § 482(a).[1]

Blunden timely filed his challenge to the election results by sending a letter addressed to Doug Padgett, General Election Chairperson, within 30 days of the election results.

---

[1]Section 402(a) of the LMRDA provides:

A member of a labor organization--

(1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or

(2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation,

may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 481 . . . .

29 U.S.C. § 482(a).

Blunden's September 22, 2004, letter listed over fifty allegations of election misconduct. Padgett denied Blunden's protest without explanation by letter dated November 9, 2004. The letter states:

> The 2004 UFCW Local 951 Election Committee voted unanimously to deny the challenges you filed to the recent officer election.

(Pl. Reply Br. Ex. 3).

Blunden timely filed his challenge with the International President by letter dated October 20, 2004. Having received no final decision from the International Union within three calendar months after invoking his remedies under the International Constitution, Blunden filed a timely complaint with the Department of Labor on January 20, 2005.

The Union does not contest Blunden's compliance with the time requirements for challenging the election. The Union contends that Blunden failed to exhaust his internal union remedies because he refused to provide the Union information in his possession pertaining to his challenges of misconduct and because he lied to the Union. By letter dated September 24, 2004, Padgett advised Blunden that many of his allegations are "vague and broad and, as such, fail to provide the election committee with sufficient information for it to make even a cursory investigation, much less a thorough review of your challenges." Padgett further advised Blunden that

> for all of your allegations, it is essential that you provide the undersigned with any and all information and facts in support of them. This should include any specific statements of fact that form the basis of each of your allegations; any documents; the names and addresses of all witnesses, as well as a statement of

>what the witnesses may state in support of the allegations; and all dates, times and witness names to support each of your allegations.

(Blunden Dep. Ex. 3).

In order to meet the exhaustion requirement a complainant must give the union "fair notice" and a "fair opportunity to consider and redress" the complaints. *Wirtz v. Local Union No. 125, Laborers' Int'l Union of North America*, 389 U.S. 477, 481, 484 (1968). The Sixth Circuit has observed that Title IV represents "a balance between the public interest in fair and democratic elections, on the one hand, and the importance of minimizing government encroachment upon union autonomy, on the other." *Martin v. Local 480, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO,* 946 F.2d 457, 461 (6th Cir. 1991) (quoting *Donovan v. Local 3122, Commc'n Workers of America*, 740 F.2d 860, 861 (11th Cir. 1984)). "As one aspect of this equilibrium, Congress has determined that before the Secretary may intrude upon union election procedures, his authority must be called forth by a union member who has either exhausted his union remedies or invoked them without satisfaction for three months." *Id.* (quoting *Donovan*, 740 F.2d at 861). According to the Sixth Circuit, Supreme Court decisions have made clear that "the exhaustion requirement of LMRDA was intended to encourage union members to avail themselves of internal union remedies before seeking government intervention and to give a union the first opportunity to correct election abuses." *Holmes v. Donovan*, 796 F.2d 173, 177 (6th Cir. 1986).

The Union contends that Blunden's failure to provide information in his possession and his false statements denied the union a "fair opportunity" to investigate his challenges to the election.

Not surprisingly, the Union has cited no authority that would support its demand for such an exacting level of specificity and documentary support. The case law contains a far more lenient standard for satisfying the exhaustion requirement:

> Of course, any interpretation of the exhaustion requirement must reflect the needs of rank and file union members – those people the requirement is designed ultimately to serve. We are not unmindful that union members may use broad or imprecise language in framing their internal union protests and that members will often lack the necessary information to be aware of the existence or scope of many election violations. Union democracy is far too important to permit these deficiencies to foreclose relief from election violations; and in determining whether the exhaustion requirement of § 402(a) has been satisfied, courts should impose a heavy burden on the union to show that it could not in any way discern that a member was complaining of the violation in question. But when a union member is aware of the facts supporting an alleged election violation, the member must, in some discernible fashion, indicate to his union his dissatisfaction with those facts if he is to meet the exhaustion requirement.

*Hodgson v. Local Union 6799, United Steelworkers of America, AFL-CIO*, 403 U.S. 333, 340-41 (1971).

Blunden's September 30, 2004, letter to Padgett listed over fifty allegations of election misconduct. The allegations included the following:

> 21) Local 951 failed to timely distribute my campaign literature, discriminated in the availability of the membership list and/or provided unequal treatment in the use of Union facilities which affected the outcome of the election.

7

> 41) Local 951 bargaining unit members have advised me that Robert Potter and his staff, including but not limited to Local 951 Business Representatives, Local 951 Executive Board Members, Local 951 Stewards began home calling and campaigning on or before August 16, 2004. I was not given the membership and/or phone list at the same time that Robert Potter and his campaign received the list. This affected the outcome of the election.

(Blunden Dep. Ex. 5).

These allegations are more than sufficient to give the Union fair notice of the telephone list challenge that is the subject of this motion. Accordingly, the Court is satisfied that Blunden exhausted his Union remedies, at least as to the issue presented in this motion for summary judgment.

**B. Discrimination**

The Secretary alleges that the Union violated § 401(c) by discriminating in its use of membership lists. Specifically, the Secretary contends that the Union discriminated in favor of the Potter Slate by its "failure to advise Blunden in a timely fashion of the availability of the list [telephone records] and the identity of the vendor who was providing the telephone service." (Pl. Br. at 11).

The Union contends that the Secretary's argument lacks merit because neither the statute nor the regulations include a requirement of "timeliness" or a duty to disclose the identity of the vendor.

The Union reads the statute and the regulations too narrowly. "The basic objective of Title IV of the LMRDA is to guarantee 'free and democratic' union elections." *Local 3489, United Steelworkers of America, AFL-CIO v. Usery*, 429 U.S. 305, 309 (1977)

(quoting *Wirtz*, 391 U.S. at 504). To that end the LMRDA provides that every labor organization has a duty "to refrain from discrimination in favor of or against any candidate with respect to the use of lists of members." 29 U.S.C. § 481(c). This statute further provides that

> whenever such labor organizations or its officers authorize the distribution by mail or otherwise to members of campaign literature on behalf of any candidate or of the labor organization itself with reference to such election, **similar distribution at the request of any other bona fide candidate** shall be made by such labor organization and its officers, with equal treatment as to the expense of such distribution.

29 U.S.C. § 481(c) (emphasis added).

The Secretary's regulations interpreting the duty not to discriminate with respect to membership lists provides:

> (b) It is the duty of the labor organization and its officers to refrain from discrimination in favor of or against any candidate with respect to the use of lists of members. Thus, **if a union permits any candidate to use such lists in any way other than the right of inspection granted by the Act, it must inform all candidates of the availability of the list for that purpose and accord the same privilege to all candidates who request it.** Such privileges may include permitting inspection of the list where members are not subject to a collective bargaining agreement requiring membership as a condition of employment, inspecting the list more than once, or copying the list.

29 C.F.R. § 452.71(b) (emphasis added).

"[T]he nondiscrimination provisions of Section 401(c) are clearly aimed at insuring that unions are evenhanded with respect to the use of member lists by candidates for union office." *Chao v. Local 54, Hotel Employees and Restaurant Employees Int'l Union*, 166 F. Supp. 2d 109, 122 (D.N.J. 2001).

9

It is well recognized that incumbent union officials have inherent advantages over other union members. *See Int'l Org. of Masters, Mates & Pilots v. Brown,* 498 U.S. 466, 476 (1991) (holding that the anti-discrimination clause of § 401(c) was "specifically designed to offset the 'inherent advantage over potential rank and file challengers' possessed by incumbent union leadership."); *Reich v. Local 396, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO,* 97 F.3d 1269, 1273 (9th Cir. 1996) ("Because the LMRDA was meant to mitigate the advantages of incumbency, courts construing Title IV's provisions have been sensitive to the competitive disadvantages challengers face when running against incumbents."); *Brown v. Lowen*, 857 F.2d 216, 218 (4th Cir. 1988) (noting that the advantages of incumbency over any attempt of an insurgent to promote his candidacy are "obvious"); *Donovan v. CSEA Local Union 1000*, 761 F.2d 870, 876 (2d Cir. 1985) (holding that burdens on non-incumbent candidates should be critically scrutinized "on account of the advantage that incumbents or committee-selectees naturally enjoy relative to rank-and-file members.").

The lack of an explicit "timeliness" or vendor disclosure requirement does not suggest that timely disclosures or disclosures of vendor information is not required. What a union must do to meet its duty to refrain from discrimination will vary with the circumstances. Accordingly, the question for the Court on this motion is to determine whether the timing and content of the Union's disclosure of the use of telephone lists by the incumbent slate satisfied

the Union's duty not to discriminate in favor of or against any candidate, and its duty to accord "the same privilege" to use the list to all candidates who request it.

The relevant facts surrounding the timing of Blunden's requests and the Union's disclosures are not in dispute. By letter dated July 20, 2004, the Potter Slate advised Karin Hopman, Director of the Local 951 Business Office, of its intent to conduct a direct telephone contact program with all Local 951 members, and requested information as to the charges for the telephone list and where payment should be made. Two additional letters followed on August 13, 2004. On July 29, 2004, Debora Wood, supervisor of membership records for Local 951, sent the list of telephone numbers for the Potter campaign calls scheduled to be conducted on August 17, 18, and 19 to Robert Allison, Communications Director for the Service Employees International Union ("SEIU"). Allison, manages the Michigan SEIU Phone Center, which provides automatic telephone dialing services. SEIU leases the phone center to other organizations. On August 19, Debora Wood emailed, an additional list of telephone numbers for the Potter campaign calls. The Potter campaign's telephone calls were made on August 17, 18, 19, and 20.

In a letter dated July 28, 2004, and addressed to Padgett, Blunden advised that he was running for Local 951 President and that he was planning a campaign mailing. Blunden requested information about the rules regarding an election mailing. He also requested Padgett to inform him of "[a]ny services, information or facilities being offered or used by any other candidates so I may have access to the same." (Pl. Ex. 8). Padgett responded by

11

letter dated July 30, 2004. He provided information regarding mailings, but did not mention the Potter Slate's request for telephone lists for use in their campaign.

By letter dated August 16, 2004, and received by Blunden on August 17, 2004, Padgett advised Blunden that a candidate had requested a list of member telephone numbers, that the list would be made available to him upon request, and that his requests should be directed to Debora Wood. (Pl. Ex. 17). Five days later, Blunden's assistant, Robin, called Debora Wood to ask what it would take to use the telephone lists. (Blunden Dep. at 161-63). In a letter to Padgett dated August 26, 2004, Blunden advised that Wood told his assistant, Robin, that Blunden would have to identify a vendor and that it may take some time for the phone list to be sent to the vendor. (Blunden Dep. Ex. 17). In a second letter to Padgett dated August 26, 2004, Blunden requested additional addresses for a second targeted mailing. (Blunden Dep. Ex. 14). Blunden never requested a telephone list, either verbally or in writing. (Blunden Dep. at 164).

Wood states in her affidavit that had Blunden asked for a list of telephone records, she could have provided a list to a call center on the same date it was requested. (Debora Wood Minor Aff. ¶ 4). Allison states in his affidavit that had Blunden requested to use the Phone Center in August 2004, it would have taken approximately one-day lead time to setup after receiving the telephone numbers from UFCW Local 951. (Allison Aff. ¶ 10).

The Secretary contends that because the Union did not disclose the Potter Slate's use of telephone records until August 17, one day after the ballots were sent out, and over three

12

weeks after the Potter Slate's initial request for telephone records, its untimely disclosure was discriminatory as a matter of law.

The Union contends that the facts do not support a finding that it discriminated against Blunden regarding the use of telephone lists. According to the Union, the telephone lists were made available to Blunden under the same terms applied to the Potter Slate; Padgett did not know of any candidate's request for telephone lists when he responded to Blunden's July 28 letter; Padgett disclosed that other candidates had used telephone lists within three days of the Potter Slate's August 13, 2004, request for telephone lists; Blunden never requested the telephone list; and Blunden had a reasonable opportunity to access and use the records after he received notice.

There is an issue of fact as to whether the timing of the Union's disclosure of the incumbent's use of telephone lists was discriminatory. Blunden requested the Union to inform him of any information being used by any other candidate in his letter of July 28. Although the Potter Slate requested telephone lists the following day, Blunden was not informed of that request for over three weeks. Even if Padgett did not know about the Potter Slate's request when he wrote his July 30 letter to Blunden, his lack of knowledge on July 30 does not explain the failure to disclose the Potter Slate's use of the telephone lists until August 16. On the other hand, the Court cannot determine, on this record, that in the absence of a specific request for a telephone list the three week delay was unreasonable or discriminatory.

13

There are also issues of fact as to whether Blunden had a reasonable opportunity to use the telephone lists once their use by the Potter Slate had been disclosed. Although the Union has presented evidence that Blunden could have used the lists within a day or two of learning about them, there is conflicting evidence regarding what the Union informed Blunden about the time it would take to initiate a telephone campaign. There may also be an issue of fact as to how the Union responded to Blunden's inquiry about working with vendors. The Secretary states, without citation to evidence, that it is common practice for a Union to specify acceptable vendors. Although the Court is aware of no rule requiring a union to specify acceptable vendors, the Union in this case did specify the particular vendor that Blunden should use for his mailing. There is also evidence in this case that Union employees knew to send the incumbent's telephone list to the SEIU without having received specific direction in the incumbent's letter requesting to use telephone lists. Union employees, by virtue of their administrative positions, may have access to information that is not readily available to other union members. *Chao v. Local 54,* 166 F. Supp. 2d at 122-23. The Union's knowledge of specialized information and its failure to pass along such information to some candidates while sharing it with others may be evidence of discriminatory conduct.

The Court is satisfied that there are questions of fact as to whether the Union's delay in disclosing the use of its telephone lists by the incumbent Potter Slate and the limited information it supplied Blunden in response to his inquiry was discriminatory. There are also

14

questions of fact as to whether Blunden had a reasonable opportunity to access and use the telephone lists after the Union's disclosure. Accordingly, the Secretary's motion for summary judgment that the Union discriminated by failing to provide timely notice of the incumbent's use of Union members' telephone numbers in its campaign will be denied. In light of this determination the Court need not address the issue of whether the discrimination may have affected the outcome of the Union election.

    An order consistent with this opinion will be entered.


Date:  January 24, 2007           /s/ Robert Holmes Bell
                                                      ROBERT HOLMES BELL
                                                      CHIEF UNITED STATES DISTRICT JUDGE